UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>KRISTIAN LAVALLIS and<br>JERMAINE JACKSON,<br><br>    Defendants. | Case No. 20-20344<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER ON JACKSON'S MOTIONS TO SUPPRESS AND
LAVALLIS' JOINDERS IN SAME [35, 36, 39, 40]**

During an undercover delivery, Kristian Lavallis accepted a package containing two bundles of fake methamphetamine after a postal inspector had seized the real drugs. Jermaine Jackson and another individual were also present at the residence where the package was delivered. When the men later left the residence with the package, they were arrested. The men were all carrying cell phones and Jackson was also carrying a firearm. A warrant was subsequently obtained to search the cell phones. That search revealed the men's Instagram accounts, for which a separate search warrant was obtained.

Jackson and Lavallis have been indicted on drug and gun charges. Jackson moves to suppress the evidence obtained from the search of his cell phone and Instagram account. He claims the affidavit in support of the cell phone warrant failed to establish probable cause as there was no evidence of the phone's use in criminal activity and that the search of his Instagram account was the product of an unlawful search—or, in legal parlance, "fruit of the poisonous tree." Lavallis joins in the motions. While it is a close call on the establishment of probable cause to search Jackson's cell phone, the postal inspector acted in good faith in relying on the warrant issued by a

United States Magistrate Judge. Thus, Jackson's motions to suppress, and Lavallis' joinders, are DENIED.

## I.

Jackson's motions center around the search warrant affidavits of United States Postal Inspector Christopher Bradshaw. Those affidavits provide, in part, the following background information.

On March 3, 2020, Inspector Bradshaw intercepted an express mail parcel addressed to "Anthony Evans" at XXX E. Pike Street in Pontiac, Michigan. (ECF No. 41, PageID.152.) Bradshaw believed the parcel had several characteristics of one containing controlled substances. (*Id.* at PageID.153.) So he obtained a warrant authorizing its search. (*Id.*) The parcel contained two bundles of methamphetamine weighing approximately 980 grams, which is consistent with a distribution amount. (*Id.*)

On March 5, 2020, postal inspectors and DEA agents, after replacing the real drugs with two bundles of fake methamphetamine, conducted a controlled delivery of the parcel. (*Id.*) An undercover postal inspector, acting as a mail carrier, went to the Pike Street address. (*Id.*) He delivered the package to Lavallis who said he was "Anthony Evans." (*Id.* at PageID.153–154.)

About an hour later, three men—Lavallis, Jackson, and Darwell Anthony McDonald—left the residence "with the . . . [p]arcel in hand." (*Id.* at PageID.154.) As they attempted to enter a Ford Mustang, they were apprehended by law enforcement and eventually taken into custody. (*Id.*) Lavallis was carrying a flip phone and McDonald was carrying an iPhone. (*Id.* at PageID.154-155) Jackson, too, was carrying an iPhone, and he also had a loaded handgun on his person. (*Id.* at PageID.154.) The phones were seized by the arresting officers. (ECF No. 41, PageID.151.) The agents and inspectors also executed a federal warrant that authorized the search of the Pike Street

residence and the Mustang. (*Id*.) A fourth phone was found in a bedroom of the residence and another firearm was found in the Mustang. (*Id*. at PageID.155; ECF No. 42, PageID.175.) (The gun in the Mustang was referenced only in the Instagram search warrant affidavit.)

Jackson and McDonald both agreed to speak to the agents. Jackson advised that, after having a fight with his girlfriend, he was at the Pike Street residence playing a game with Lavallis and McDonald. (*Id*. at PageID.155.) He denied knowledge of the contents of the subject parcel and said the men were going to the post office to return it. (*Id*. at PageID.155–156.) He admitted possession of the firearm which he had bought unlawfully one month earlier. (*Id*. at PageID.156.) McDonald also denied ownership of the package. (*Id*.) He told Jackson and Lavallis that the parcel had been opened and that something was wrong with it. (*Id*.) He further disclosed that Lavallis was going to take him to a pharmacy to purchase Adderall and that he had texted his girlfriend that he was going to sell the Adderall. (*Id*.)

On March 6, 2020, Lavallis and Jackson were charged in a criminal complaint. (ECF No. 1.) The complaint alleged that Lavallis was carrying the package when the men left the Pike Street residence. (*Id*. at PageID.5.) Lavallis was charged with possession with intent to distribute a controlled substance, and Jackson was charged only with being a felon in possession of a firearm. (ECF No. 1.)

One week later, Postal Inspector Bradshaw submitted an affidavit to a federal magistrate judge in support of a warrant to search the four cell phones that had been seized following the undercover delivery of the subject parcel to the Pike Street address. (ECF No. 41 at PageID.164.) Bradshaw advised that he was investigating Lavallis, Jackson, and McDonald for conspiracy to distribute controlled substances and unlawful use of a communication facility, and Jackson for being a felon in possession of a firearm. (ECF No. 41, PageID.150.) Bradshaw stated that he had

probable cause to believe the cell phones "may contain evidence regarding drug trafficking and the illegal acquisition and possession of a firearm by a previously convicted felon." (ECF No. 41, PageID.157.) In addition to the background facts set forth above, Bradshaw stated that, based on his training and experience and the investigations of other law enforcement officers he spoke with, he was aware that those involved in the drug trade often use cell phones to facilitate drug trafficking. (*Id.*) Bradshaw said "cellular telephones are likely to contain evidence related to recently called drug contacts or messages/calls received from the contacts, the names and telephone numbers of drug contacts, messages to/from drug traffickers, photographs of drug locations or activity, and photographs of those involved in crimes. In this respect, cellular phones are tools of the trade." (*Id.*) Also based on his training and experience, Bradshaw said he was aware that those who unlawfully possess firearms often use cell phones to facilitate the acquisition and transfer of firearms. (*Id.*) A federal magistrate judge issued the warrant. (*Id.* at PageID.163.)

The search of at least two of the subject phones uncovered photographs of suspected packaged methamphetamine, scales, firearms, and large sums of money. (ECF No. 42, PageID.175.) The search also revealed that the Instagram app was installed on the three iPhones. (*Id.*) From information on the phones and his review of publicly available Instagram information, Bradshaw was able to associate three specific Instagram accounts with Lavallis, Jackson, and McDonald. (*Id.* at PageID.175–176.) One account with a username "Shutup_bum" contained a video with Jackson, a previously convicted felon, holding a firearm, as well as a photograph of stacks of cash. (*Id.* at PageID.176.) On July 7, 2020, another federal magistrate judge authorized a search warrant to search the three Instagram accounts referenced in Bradshaw's search warrant affidavit. (ECF No. 42.)

Case 2:20-cr-20344-LJM-APP  ECF No. 45, PageID.251  Filed 01/27/21  Page 5 of 13

Following these searches, a grand jury returned an indictment against Lavallis and Jackson on August 5, 2020. (ECF No. 27.) Both are charged with one count of conspiracy to possess with intent to distribute methamphetamine and one count of attempted possession with intent to distribute methamphetamine, and Jackson is also charged with being a felon in possession of a firearm. (*Id.*)

Jackson now moves to suppress the evidence from the searches of the cell phones and Instagram accounts. (ECF Nos. 35, 36.) Jackson claims the affidavit in support of the cell phone search warrant failed to provide any nexus between his cell phone and the allegations of illegal conduct. (ECF No. 35, PageID.118.) And, Jackson says, because Bradshaw relied on evidence gathered from the unlawful search of his cell phone to establish probable cause to search his Instagram account, the evidence obtained from that search should be suppressed as well. (ECF No. 36.)

These are legal arguments. They are fully challenged by the government in its response. (ECF No. 44.) "An evidentiary hearing is required only when the defendant has set forth contested issues of fact that bear upon the legality of the search." *United States v. Goodwin*, 552 F. App'x. 541, 548 (6th Cir. 2014) (citations omitted). As the facts are not in dispute here, the Court will decide the motions on the briefs.

## II.

The Fourth Amendment requires that a search or seizure be supported by probable cause, which is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (quoting *United States v. Padro*, 52 F.3d 120, 122–23 (6th Cir. 1995)). The job of the magistrate judge presented with a search warrant application is "simply to make a practical, common-sense decision

5

whether, given all the circumstances set forth in the affidavit, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "There must, in other words, be a nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). This Court gives great deference to the magistrate judge's finding of probable cause. *Abboud*, 438 F.3d at 571; *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000).

**A.**

The Supreme Court has made clear that a cell phone cannot be searched simply because it was seized incident to an arrest. *Riley v. California*, 134 S. Ct. 2473, 2493 (2014). Unless an exception applies, officers must have probable cause for a warrant. In seeking to establish probable cause that the cell phones would contain evidence of drug trafficking and illegal acquisition and possession of a firearm, Postal Inspector Bradshaw's search warrant affidavit sets out the background facts of the controlled delivery and resulting arrests. He also relies on his training, experience, and information learned from other investigations, including that those involved in the drug trade often use cell phones to facilitate drug trafficking, and those involved in the unlawful possession of firearms often use cell phones to facilitate the acquisition and transfer of firearms. (ECF No. 41, PageID.158.)

Jackson argues that this information fails to establish an evidentiary nexus between criminal activity and his cell phone. (ECF No. 35, PageID.119.) The package containing the methamphetamine was not addressed to Jackson. He says he was at the Pike Street address to play games with Lavallis. He did not accept delivery of the package. More importantly, says Jackson, there is no evidence in the supporting affidavit that his phone was used to facilitate drug trafficking and no evidence of texts or calls among conspirators. (ECF No. 35, PageID.119–120.) And

6

"[p]ossessing a cell phone during one's arrest for a drug-related conspiracy is insufficient by itself to establish a nexus between the cell phone and any alleged drug activity." *United States v. Ramirez*, 180 F. Supp. 3d 491, 495 (W.D. Ky. 2016).

The Sixth Circuit seems to agree that an affidavit does not establish probable cause where, as in *Ramirez*, it relies only on (1) the fact that the defendant had a cell phone on him during his arrest for a drug-related conspiracy (but no details about the charge or arrest) and (2) the affiant's claim that his training and experience suggest such conspiracies are often facilitated by cell phones. *See United States v. Meriweather*, 728 F. App'x 498, 506 (6th Cir. 2018). But the Sixth Circuit has also found that, when the affidavit contains more—in particular, a factual basis to support a conspiracy or coordinated activity—a search of a member's cell phone is not unreasonable. For instance, in *Meriweather*, the Court explained, "the *Ramirez* affidavit did not, as the instant one did, allege that cell phones were used to facilitate two drugs buys from [defendant] or that the particular cell phone at issue was found in a vehicle containing apparent oxymorphone, the very drugs involved in the conspiracy." *Id*. Similarly, in *United States v. Bass*, 785 F.3d 1043 (6th Cir. 2015), the Sixth Circuit found that an affidavit in support of a search of the defendant's cell phone established a nexus between the phone and the charged fraud conspiracy because the affidavit "stated that [the defendant] and his co-conspirators frequently used cell phones to communicate" and it "further noted that [the defendant] was using this particular . . . cell phone when officers seized it incident to his arrest." *Id*. at 1049; *see also United States v. Jefferson*, No. 14-20119, 2015 U.S. Dist. LEXIS 72743, at *11–12 (E.D. Mich. June 5, 2015) (finding that search warrant affidavit established probable cause to search cell phone seized during arrest of gang member where the affidavit stated that members of the gang use cell phones to "communicate with other members and associates, to plan specific acts of violence and other crimes, to discuss past criminal activity,

7

and to further the goals of the gang."). In short, "a number of courts have found that an affidavit establishes probable cause to search a cell phone when it describes evidence of criminal activity involving multiple participants and includes the statement of a law enforcement officer, based on his training and experience, that cell phones are likely to contain evidence of communications and coordination among these multiple participants." *United States v. Gholston*, 993 F. Supp. 2d 704, 720 (E.D. Mich. 2014).

This case borders the line drawn by this precedent. On the one hand, the affidavit has more facts supporting probable cause than the one in *Ramirez*. Bradshaw's affidavit expressly states that Jackson, together with Lavallis and McDonald, left the Pike Street residence "with the subject parcel in hand" and attempted to enter a Ford Mustang. At the time, all three men were carrying cell phones. Jackson was also carrying a loaded firearm that he had bought unlawfully a month earlier. The government believes Jackson's "possession of a loaded pistol is more consistent with Jackson believing there was a distribution amount of drugs in the subject parcel that they needed to protect than it is going to the post office 'to return' a mistakenly delivered package that he did not know the contents of or who had accepted it." (ECF No. 44, PageID.226–227.) As the government puts it, "Jackson's cellphone was found not just with Jackson, but with Jackson *and* a gun *and* a package that when it arrived at Pike Street, had it not been intercepted by law enforcement, would have contained nearly a kilogram of methamphetamine." (*Id*. at PageID.227) (emphasis in original). And "[a] number of decisions have concluded that probable cause to search a cell phone exists simply because cell phones discovered in proximity to crime or contraband almost invariably contain incriminating evidence." *United States v. Harris*, No. 15-0170, 2016 WL 1441382, at *11–12 (E.D. Va. Apr. 11, 2016) (citing cases).

But, on the other hand, Bradshaw's affidavit does not have a whole lot more than the affidavit in *Ramirez*, as Jackson argues. And some of the facts that the government points to in an attempt to show "that the magistrate judge had a substantial basis to conclude that Lavallis, Jackson and McDonald were participants in the controlled substance distribution offense, and communicated and coordinated with cellphones" (ECF No. 44, PageID.225), hardly move the probable-cause needle. These include the following: (1) Lavallis, Jackson, and McDonald all ended up at the Pike Street residence at the time of the delivery of the package, so the "facts support that Jackson knew the subject parcel was going to arrive that day and coordinated with others" (presumably by cell phone); (2) McDonald admitted that he texted his girlfriend about selling a controlled substance on the same day the package arrived which "confirms that at least one member of the group was using a cellphone to communicate about illegal drug distribution;" and (3) McDonald expressing that the package had been opened and something was wrong with it supports that he had information about or an expectation of how the package should have appeared and therefore may have been in communication with the sender. (*Id*. at PageID.225–226.)

While probable cause involves a practical, common sense decision, these arguments from the government rely on some generous inferences. Bradshaw's affidavit makes clear that law enforcement controlled the delivery of the subject package. There is nothing in the record that indicates Jackson—or even Lavallis—knew it would be arriving on March 5, 2020. The affidavit also makes clear that the agents searched the package and replaced the real methamphetamine. They obviously had opened the package. So when McDonald noticed the package had been opened, it is a stretch to infer this was because he had likely communicated with the sender. And yes, McDonald texted his girlfriend that he intended to sell his Adderall. Does that really create a

fair probability that Jackson's cell phone would contain evidence of methamphetamine distribution?

Ultimately, the Court need not decide which side of the *Ramirez-Merriweather* line this case falls. It suffices to say that, especially because the search warrant affidavit makes no mention of any communications involving Jackson's cell phone, it is close to falling on the wrong side, and that, in the future, an affidavit should contain more.[1] The Court need not make the close call, though, because the Court finds that the government acted in good faith in relying on the warrant. *United States v. Leon*, 468 U.S. 897, 918–21 (1984).

**B.**

The exclusionary rule does "not bar the government's introduction of evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 918–921). "[T]he relevant question is whether the officer reasonably believed that the warrant was properly issued, not whether probable cause existed in fact." *United States v. Hython*, 443 F.3d 480, 487 (6th Cir. 2006).

The good faith exception, though, does not apply in certain situations, including "where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" and "where the officer's reliance on the warrant was not in good faith or

---

[1] It is doubtful that the search warrant affidavit established a fair probability that evidence of gun possession would be found on Jackson's phone. Inspector Bradshaw states that he is "aware that those involved in the unlawful possession of firearms often use cellular telephones to facilitate the acquisition and transfer of firearms." (ECF No. 41, PageID.158.) But if that was enough, it would be no different than a search incident to an arrest for being a felon in possession of a firearm, which *Riley* does not allow. 134 S. Ct. at 2492 (observing that "allowing a warrantless search of an arrestee's cell phone whenever it is reasonable to believe that the phone contains evidence of the crime of arrest" would "prove no practical limit at all when it comes to cell phone searches.").

objectively reasonable, such as where the warrant is facially deficient." *Id*. at 484 (citing *Leon*, 468 U.S. at 923).

Relying on *Ramirez*, Jackson argues that "[a] warrant [that] relies solely on the training and experience of an officer is facially deficient because the Fourth Amendment demands a nexus to exist to the place to be searched. No officer, much less a post inspector with seven years of training of experience, could reasonably rely on a warrant that relies only [on] general information." (ECF No. 35, PageID.121.) But again, Bradshaw's affidavit contained more information than the affidavit in *Ramirez*. In addition to describing Bradshaw's training and experience, it details that Jackson was at the residence where the drug parcel was delivered; he left the residence with the man who accepted delivery of the drug parcel and one other individual; the three men had the parcel with them as they attempted to enter a Ford Mustang; they all had cell phones; Jackson was armed; and the story that they were simply making a run to the post office was questionable. A federal magistrate judge issued the warrant. This "is not a case in which a 'simple glance' at the warrant would reveal deficiencies glaring enough to make reliance on it unreasonable." *United States v. Castro*, 881 F.3d 961, 966 (6th Cir. 2018) (citing *United States v. Watson*, 498 F.3d 429, 432 (6th Cir. 2007)). Nor is the warrant "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Watkins*, 179 F.3d 489, 494 (6th Cir. 1999). "All in all, this was not the kind of 'deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights' that triggers suppression." *Castro*, 881 F.3d at 966 (citing *Davis v. United States*, 564 U.S. 229, 238 (2011)).

Thus, the Court finds that the information derived from the search of the subject cell phones should not be suppressed as it was obtained in reasonable, good-faith reliance on the search warrant and none of the exceptions to the good faith rule apply.

## C.

This resolves, as well, the challenge to the search of Jackson's Instagram account.

Postal Inspector Bradshaw also prepared the search warrant affidavit in support of a warrant to search for information associated with three Instagram accounts—"RIPVOT," "DARWEEZ_," and "SHUTUP_BUM." (ECF No. 42.) These are the accounts associated with Lavallis, McDonald, and Jackson. (*Id*. at PageID.176.) Bradshaw made this connection based on evidence recovered from the search of the cell phones as well as other publicly available Instagram information. (*Id*. at PageID.175–176.)

Evidence obtained from an unlawful search is considered "fruit of the poisonous tree" and is inadmissible under the exclusionary rule. *Wong Sun v. United States*, 371 U.S. 471, 484–87 (1963); *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008). Jackson contends, with a joinder from Lavallis, that "the results of the Instagram warrant must be suppressed as fruits of the illegal cell phone search." (ECF No. 36, PageID.130.) Based on the Court's finding, however, that the information obtained from the cell phone warrant is admissible under the good-faith exception, the Instagram warrant is "not based on any tainted material that would justify suppression under the derivative rule." *United States v. Powell*, 943 F. Supp. 2d 759, 784 (E.D. Mich. 2013), *aff'd*, 847 F.3d 760 (6th Cir. 2017); *see also United States v. Marroquin*, No. 19-CR-31, 2020 U.S. Dist. LEXIS 203287, at *20 (E.D. Ky. July 10, 2020) ("because the information obtained through the Facebook warrant is admissible under the good-faith exception, the 'fruits' of that search are not subject to suppression."); *United States v. Nantz*, No. 20-CR-2, 2020 U.S. Dist. LEXIS 102362, at *3, n.4 (E.D. Ky. June 11, 2020) (finding "that excluding fruits of a good-faith search (one upheld despite warrant invalidity) would be wholly inconsistent with the principles undergirding the good-faith exception and the purposes of the exclusionary rule").

The Court also agrees with the government that the agents who executed the Instagram warrant had no reason to believe that it was based on information obtained from an invalid search. Thus, the good faith exception also applies to Instagram warrant. *See United States v. McClain*, 444 F.3d 556, 566 (6th Cir. 2005) ("Because the officers who sought and executed the search warrants acted with good faith, and because the facts surrounding the initial warrantless search were close enough to the line of validity to make the executing officers' belief in the validity of the search warrants objectively reasonable, we conclude that despite the initial Fourth Amendment violation, the *Leon* exception bars application of the exclusionary rule" to the subsequent search.).

### III.

For all of these reasons, Jackson's motions to suppress, and Lavallis' joinders, are DENIED.

IT IS SO ORDERED.

Dated: January 27, 2021

                                                   s/Laurie J. Michelson
                                                   LAURIE J. MICHELSON
                                                   UNITED STATES DISTRICT JUDGE